B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:07-CV-1994-B |
| T-BAR RESOURCES, LLC, et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court is Temporary Receiver Robert T. Shepard's (hereinafter, the "Receiver") Motion to Sell Certain Oil and Gas Interests (doc. 47) (hereinafter, the "Motion"). For the reasons that follow, the Court finds that the Motion should be and hereby is **DENIED**.

## I. BACKGROUND

On November 30, 2007, the Securities and Exchange Commission (hereinafter, "SEC") filed this action against Tommy Eugene Barber and T-Bar Resources, LLC (hereinafter, collectively "Defendants"). (Compl.) In its complaint, the SEC alleged that Defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934 by fraudulently offering and selling securities in three different oil and gas drilling projects. (*Id.* at ¶¶ 1, 4.)

In response to the SEC's complaint, the Court entered a preliminary injunction freezing all of Defendants' assets. (Agreed Preliminary Inj. And Emergency Asset Freeze Order.) The Court then placed Defendants' assets into a receivership estate and appointed the Receiver to manage

them. (Agreed Order Appointing Temporary Receiver.)

Among the assets under the Receiver's management were oil and gas interests owned by Defendants and arising out of one of the projects discussed in the SEC's complaint, the Arrowhead Project. The Arrowhead Project represents a series of fifteen wells drilled and maintained in Caldwell County, Texas. (Mot. to Sell Certain Oil & Gas Interests ¶¶ 2, 3.) The project has thus far been unprofitable, as the wells' production levels have been lower than expected. (*Id.* at ¶¶ 4, 9.)

After the Receiver's appointment, the Arrowhead Project's Operator, Reliance Oil and Gas (hereinafter, the "Operator"), (*id.* at ¶ 4), submitted invoices totaling $82,481.27 to the Receiver, demanding payment for work done on the fifteen wells, (*id.* at ¶ 9). The Receiver failed to pay these debts due to a lack of available funds in the receivership estate. (*Id.*) The Operator has additionally determined that the Arrowhead Project's production will improve if the wells are fractured. (*Id.* at ¶ 4.) Fracturing the wells will cost a total of $1,575,000.00, with the receivership estate being responsible for $1,008,000.00 of the cost, (*id.*); however, the receivership estate also lacks the funds to pay this expense, (*id.*).

Because the Receiver was unable to pay for the maintenance or fracturing of the Arrowhead wells, he began looking for individuals interested in buying the receivership estate's interest in the project. (*Id.* at ¶ 5.) To determine the value of the interests, the Receiver contacted eight petroleum engineers to obtain appraisals. (*Id.*) Of the eight engineers contacted, only one, Gary Swindell (hereinafter, "Swindell"), agreed to conduct an appraisal. (*Id.*) While examining the publicly reported data on the Arrowhead Project, Swindell concluded that the data was untrue. (*Id.* at ¶ 6.) Consequently, he was unable to provide an accurate appraisal value for the oil and gas interests. (*Id.*)

Swindell subsequently spoke with the Operator, and from their discussions, determined that the wells would not likely produce in paying quantities, and that, in their current state, the wells represent a substantial plugging liability.[1]  (*Id.* at ¶ 7.)

Notwithstanding Swindell's pessimistic appraisal of the Arrowhead Project, the Receiver obtained an offer to purchase the oil and gas interests in the Arrowhead Project.  (*Id.* at ¶ 11.)  SAL Energy, LLC (hereinafter, "SAL Energy") offered to pay $175,000.00 for the receivership estate's interest in the Arrowhead Project on an as-is basis.  (*Id.*)  On July 31, 2008, the Receiver and SAL Energy entered into a purchase and sale agreement for the oil and gas interests in the Arrowhead Project, (*id.*), pending authorization by this Court.

On August 19, 2008, the Receiver filed the instant Motion, seeking to sell the oil and gas interests held in the Arrowhead project.  The Receiver simultaneously notified the Arrowhead Project's investors of the proposed sale and directed them to file any objections with the Court.  (*Id.*, Ex. "C.")  Two investors filed objections with the Court, complaining of the sale price and lack of information about SAL Energy.  (Resp. in Opp'n.)

On October 1, 2008, the Court held a hearing on the Motion.  Though they received notice of the hearing, the objecting investors failed to appear.  During the proceedings, the Court heard extensive argument and testimony from the Receiver, the SEC, and Swindell.  The Receiver and the SEC each voiced their opinion that the proposed sale was in the best interests of the receivership estate. Swindell additionally testified that the oil and gas interests were nearly worthless, stating the

---

[1] The Receiver has informed the Court that it will cost $300,000.00 to plug the fifteen wells, and that the receivership estate has insufficient funds to cover this expense.  (Mot. to Sell Certain Oil & Gas Interests n. 2, 3.)

Receiver should accept any offer he received. The Court has considered the arguments presented, and now moves to the merits of its decision.

## II. ANALYSIS

"The [C]ourt has authority to authorize the sale of real estate within the receivership estate." *Sec. Exch. Comm'n v. Amerifirst Funding, Inc.*, 2008 WL 706846, at *1 (N.D.Tex. March 11, 2008) (Fitzwater, C.J.). The power to authorize the sale of real property is limited, however, by federal statute. *See* 28 U.S.C. § 2001; *Amerifirst Funding, Inc.*, 2008 WL 706846, at *1. In relevant part, that statute provides:

> Sale of realty generally
>
> ....
>
> (b) After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property .... No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in private sale.

28 U.S.C. § 2001(b). The Court thus analyzes proposed sales of real property held in a receivership estate under a best interests of the estate standard, subject to the procedural safeguards of § 2001(b).

The procedures outlined in § 2001(b) define the Court's authority to authorize the sale of real property. *See Bollinger & Boyd Barge Serv., Inc. v. Captain Claude Bass*, 576 F.2d 595, 597 (5th Cir. 1978); *United States v. Garcia*, 474 F.2d 1202, 1204 (5th Cir. 1973); *Acadia Land Co. v. Horuff*,

110 F.2d 354, 354-55 (5th Cir. 1940). Accordingly, per the express terms of the statute, a court must have the assistance of three appraisals before confirming the private sale of real property. 28 U.S.C. § 2001(b) ("*Before* confirmation of any private sale, the court *shall* appoint three disinterested persons to appraise [the] property ....") (emphasis added); *Bollinger & Boyd Barge Serv., Inc.*, 576 F.2d at 597 ("Section 2001(b) requires, *inter alia*, that the court appoint three disinterested persons to appraise the property before it can confirm a private sale."); *Garcia*, 474 F.2d at 1204; *Acadia Land Co.*, 110 F.2d at 354-55 (finding requirements of § 2001(b) "conditions precedent to a valid sale"). Only upon reviewing the multiple appraisals may a court finally determine whether a proposed sale is in the best interests of the estate. *See* 28 U.S.C. § 2001(b).

In this case, despite his persistent efforts to find three experts, the Receiver has only been able to obtain one, Swindell. In Swindell's opinion, because the publicly reported information has been falsified, it is impossible to provide an accurate appraisal of the oil and gas interests. Although the Court finds Swindell's testimony credible,[2] absent two additional appraisals for the Court's consideration, the Court finds it is without power to confirm the proposed sale. The explicit terms of § 2001(b) command no less.[3]

Dissecting the construction of § 2001(b) reaffirms this conclusion. The statute permits courts to authorize the private sale of real property so long as the sale satisfies the best interests standard. *Id.* But "[b]efore" courts may confirm such a sale, they "shall" order three appraisals. *Id.* Section

---

[2]As the record reflects, the Court specifically found Swindell's hearing testimony to be credible.

[3]At the hearing on the Motion, the Court stated, on the record, that it viewed the proposed sale to be in the best interests of the receivership estate. However, upon examining its empowering statute more closely, the Court is of the opinion that it cannot pass judgment on the ultimate question of the estate's best interests without first complying with the express terms of the statute, as fully explained *infra*.

2001(b) then instructs that a proposed price lower than two thirds of the appraisal value may not be confirmed, *id.*, thereby deeming such a low number as counter to the best interests of the estate. Congress thus, through the plain text of § 2001(b), exercised its judgment of what satisfies the best interests standard in consideration of the appraisal values. Courts, therefore, shall similarly not pass judgment on the best interests standard absent the benefit of the mandated appraisals.

Reading § 2001(b) in context with its surrounding counterparts provides further proof of the mandatory nature of the three appraisals. For example, in allowing courts to order the private sale of personal property, 28 U.S.C. § 2004 informs that courts are to follow the same procedures outlined in § 2001(b), "unless the court orders otherwise."[4] *Id.* Congress thus considered deviating from the rigors of § 2001(b)'s procedures in relaxing the process for the sale of personalty. The absence of any such authorization in the sale of realty suggests that Congress intended the more stringent procedures to be the rule when ordering the sale of real property.

Moreover, even if the Court had the necessary appraisals before it, it would still not be free to confirm the proposed sale. *See* 28 U.S.C. § 2001(b). The terms of the proposed transaction must first be published in a newspaper of general circulation. *Id.*; *Amerifirst Funding, Inc.*, 2008 WL 706846, at *2. This final requirement protects the estate's interests by forbidding confirmation of a private sale when another offeror comes forward bidding ten percent more than the proposed price.

---

[4]Few courts have interpreted § 2004's express authorization to deviate from the general procedural safeguards. *See Sec. Exch. Comm'n v. Kirkland*, 2008 WL 4264532, at *2 (M.D. Fla. Sept. 12, 2008). The courts that have engaged in such an analysis focus their attention on the text of § 2001(b), reading an exception into the statutory language when the sale involves *personalty*. *See Tanzer v. Huffines*, 412 F.2d 221, 222 (3d Cir. 1969); *Kirkland*, 2008 WL 4264532, at *2. These courts recognize, however, that § 2001(b) establishes a "preferential course to be followed," that should only be deviated from in "extraordinary circumstances." *Tanzer*, 412 F.2d at 222. Each example invoking this exception involves the sale of personal property, and no authority exists for failing to follow the plain text of § 2001(b) when the sale concerns real property.

28 U.S.C. § 2001(b). Because the terms of the present sale have not been published, the Court may not confirm the transaction.

Congress enacted the foregoing safeguards to protect against the high opportunity for fraud inherent in private sales of realty. *Acadia Land Co.*, 110 F.2d at 354. "This purpose could not be effected if non-compliance with any material requirement were permitted, and, for that reason, all of the requirements are, by the express terms of the statute, made conditions precedent to a valid sale." *Id.* at 354-55. The Court therefore directs the Receiver to obtain two additional appraisals for the Court's consideration. After acquiring the appraisals, the Receiver is further directed to publish the terms of the sale in the *Wall Street Journal*. Upon the expiration of ten days after publication, the Receiver shall renew the Motion. The Court will then ultimately decide whether the sale is in the best interests of the receivership estate.

## III.  CONCLUSION

Because the procedural safeguards of § 2001(b) have not yet been satisfied, the Court is without authority to confirm the sale proposed by the Receiver. Accordingly, the Motion must be **DENIED**.

SO ORDERED.

SIGNED October 28, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE